IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

_____

No. 15-0948

_____

FILED

**November 16, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

SALEM INTERNATIONAL UNIVERSITY, LLC,
A FOREIGN LIMITED LIABILITY CORPORATION,
AND JOHN LUOTTO, PRESIDENT,
Defendants Below, Petitioners

v.

TAYLOR BATES, MICHELLE SYLVA, AMY NORTHROP,
CLARISSA HANNAH, AND GENA DELLI-GATTI ON BEHALF
OF THEMESELVES AND ALL OTHERS SIMILARLY SITUATED,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Harrison County
The Honorable James A. Matish, Judge
Civil Action No. 13-C-348-3

REVERSED AND REMANDED

_____

Submitted: October 11, 2016
Filed:  November 16, 2016

Michael S. Garrison, Esq.
Kelly J. Kimble, Esq.
Spilman, Thomas & Battle, PLLC
Morgantown, West Virginia

Eric W. Iskra, Esq.
Spilman, Thomas & Battle, PLLC
Charleston, West Virginia
Attorneys for Petitioners

Charles R. "Rusty" Webb, Esq.
The Webb Law Centre, PLLC
Charleston, West Virginia
Attorney for Respondents

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.      "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

2.      "When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo.*" Syl. pt. 4, *Ewing v. Bd. of Educ.*, 202 W. Va. 228, 503 S.E.2d 541 (1998).

3.      "[T]he trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause." Syl. pt. 4, in part, *State ex. Richmond Am. Homes of W. Va. v. Sanders*, 228 W. Va. 125, 717 S.E.2d 909 (2011).

4.      "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 1, *Berkeley Co. Pub. Serv. Dist. v. Vitro Corp.* 152 W. Va. 252, 162 S.E.2d 189 (1968).

5. "Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. pt. 6, *State ex rel. Frazier & Oxley v. Cummings*, 212 W. Va. 275, 569 S.E.2d 796 (2002).

6. "The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syl. pt. 4, *Estate of Tawney v. Columbia Nat. Res.*, 219 W. Va. 266, 633 S.E.2d 22 (2006).

7. "In determining whether or not the parties to a collective bargaining agreement have agreed to submit a particular dispute to arbitration, it must be recognized that there is a presumption favoring arbitration, and this presumption may be rebutted only where it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Syl. pt. 1, *Local Div. No. 812 v. Transit Auth.*, 179 W. Va. 31, 365 S.E.2d 76 (1987).

Benjamin, Justice:

The petitioners and defendants below, Salem International University, LLC, and its president, John Luotto (collectively "Salem"), appeal the August 27, 2015, order of the Circuit Court of Harrison County that denied Salem's motion to stay proceedings pending mandatory alternative dispute resolution of claims brought by several former nursing students at Salem. Based on the parties' briefs, oral arguments, and relevant portions of the appendix, we reverse the circuit court's order and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondents and plaintiffs below, Taylor Bates, Michelle Sylva, Amy Northrop, Clarissa Hannah, and Gena Delli-Gatti on behalf of themselves and all others similarly situated, are former students in Salem's nursing program who each signed enrollment agreements with Salem, attended classes, and paid tuition to Salem. When the respondents enrolled at Salem, they signed enrollment agreements that contained an arbitration clause. This arbitration agreement provides as follows:

> You and [Salem International University] agree that any dispute or claim between you and SIU (or any company affiliated with SIU, or any of its officers, directors, trustees, employees or agents) arising out of or relating to this Enrollment Agreement, or, your enrollment or attendance at SIU, whether such dispute arises before, during, or after your attendance and whether the dispute is based on contract, tort, statute, or otherwise, shall be, at your or SIU's election, submitted to and resolved by individual binding arbitration pursuant to the terms described herein. Arbitration shall be

1

conducted by the American Arbitration Association ("AAA") pursuant to its rules and procedures. The party electing arbitration shall comply with the AAA notice requirements. Information about AAA is available at 1633 Broadway, 10th Floor, New York, New York 10019; Toll Free: 1-800-778-7879, or the arbitration Website at ACMEADR.COM. SIU agrees that it will not elect to arbitrate any individual claim that you bring in a West Virginia magistrate or small claims court (or in a similar court of limited jurisdiction subject to expedited procedures). If that claim is transferred or appealed to a different court, however, or if your claim exceeds the limits of the applicable small claims court, SIU reserves the right to elect arbitration and, if it does so, you agree that the matter will be resolved by binding arbitration pursuant to the terms of this Section. The arbitrator shall have no authority to arbitrate claims on a class action basis, and claims brought by or against you may not be joined or consolidated with claims brought by or against any other person. Any arbitration hearing shall take place in the federal judicial district in which you reside or pursuant to AAA rules and procedures. Each party will bear the expense of its own attorneys, experts, and witnesses regardless of which party prevails, unless applicable law or this Agreement gives a right to recover any of those fees from the other party. If the arbitrator determines that any claim or defense is frivolous or wrongfully intended to oppress the other party, the arbitrator may award sanctions in the form of fees and expenses reasonably incurred by the other party (including arbitration administration fees, arbitrator's fees, and attorney, expert and witness fees), to the extent such fees and expenses could be imposed under Rule 11 of the Federal Rules of Civil Procedure. The Federal Arbitration Act ("FAA") 9 U.S.C. §§ 1, *et seq.*, shall govern this arbitration provision. This arbitration provision shall survive the termination of your relationship with SIU. The above supersedes any inconsistent arbitration provision published in any other document, including, but not limited to, SIU catalogs.

Beneath the arbitration clause there is a box titled "NOTICE OF ARBITRATION AGREEMENT:" that contains the following:

2

This agreement provides that all disputes between you and SIU will be resolved by BINDING ARBITRATION. You thus GIVE UP YOUR RIGHT TO GO TO COURT to assert or defend your rights under this contract (EXCEPT for matters that may be taken to SMALL CLAIMS COURT). *Your rights will be determined by a NEUTRAL ARBITRATOR and NOT a judge or jury. *You are entitled to a FAIR HEARING, BUT the arbitration procedures are SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. * Arbitration decisions are as enforceable as any court order and are subject to VERY LIMITED REVIEW BY A COURT. FOR MORE DETAILS *Review the provisions above, OR *Check our Arbitration Website @ ACMEADR.COM, OR *Call 1-800-000-0000.

In August 2013, the respondents filed a putative class action complaint against Salem. In the complaint, the respondents alleged that they were nursing students who were enrolled at Salem in October 2012 and thereafter and were denied the opportunity to complete their coursework in nursing at Salem as a result of the nursing program's loss of accreditation. The respondents stated claims for violation of the State Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-101–110, negligence, breach of contract, breach of the duty of good faith and fair dealing, and conversion of personal property.

In February 2014, Salem filed a motion to stay proceedings pending mandatory alternative dispute resolution in which it asserted that the respondents agreed to arbitrate their claims against Salem through the American Arbitration Association ("AAA") pursuant to the enrollment agreement they signed. In the respondents' reply to

3

Salem's motion, they asserted that the arbitration agreement at issue is unenforceable because Salem had not complied with any of the requirements of the American Arbitration Association Provision, the arbitration agreement at issue exempts class actions from arbitration, and the arbitration agreement is procedurally and substantively unconscionable. The circuit court thereafter entered an order for additional briefing in which it ordered the parties to brief the following issues:

> a. May a Court order arbitration in a putative class action if the arbitration agreement states that class actions cannot be arbitrated;
> b. If the arbitration clause does not indicate that arbitration is mandatory, but is only invoked if one of the parties demands arbitration, may a court order arbitration; and
> c. Are plaintiffs' claims covered by the arbitration agreement?

Subsequently, the parties filed additional memoranda of law, and the circuit court held a hearing on the issues at which evidence was taken.

By order entered August 27, 2015, the circuit court denied Salem's motion to stay proceedings pending mandatory alternative dispute resolution. Significantly, the circuit court in its order addressed a single issue: "*whether this otherwise valid arbitration agreement* acts as a class action waiver, barring the plaintiffs from seeking judicial relief as a class. In other words, does the plaintiffs' purported class action fall within the scope of the arbitration provision at issue?" (Emphasis added.). In finding that the arbitration agreement does not include a class action litigation waiver, the circuit court relied primarily on two principles of law. First, the circuit court relied on this Court's holding in syllabus point 10 of *Brown ex rel. Brown v. Genesis Healthcare*, 228

4

W. Va. 646, 724 S.E.2d 250 (2011) (*Brown I*), *judgment vacated on other grounds by Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201 (2012), which provides that "[u]nder the Federal Arbitration Act, 9 U.S.C. § 2, parties are only bound to arbitrate those issues that by clear and unmistakable writing they have agreed to arbitrate. An agreement to arbitrate will not be extended by construction or implication." In applying this syllabus point to the arbitration agreement, the circuit court found that while the agreement's language implies a class action litigation waiver, the language is ambiguous. Therefore, the circuit court concluded that because there is not a clear and unmistakable waiver pursuant to syllabus point 10 of *Brown I*, the circuit court would not extend the agreement, by construction or implication, to act as a class action litigation waiver.

The second legal principle relied upon by the circuit court in making its decision is the principle that when an ambiguity exists in a contract and the intent of the parties cannot be determined, the ambiguous terms will be construed against the party that drafted the agreement. The circuit court reasoned that because the language in the arbitration agreement regarding a class action litigation waiver is ambiguous, it will be construed against Salem which drafted the agreement.

Salem now appeals the circuit court's order denying its motion to stay proceedings pending mandatory alternative dispute resolution.

5

## II.  STANDARD OF REVIEW

The order appealed from in this case is an order denying Salem's motion to compel the respondents to arbitrate their claims against Salem. Under our law, "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013). Therefore, the circuit court's order is properly before this Court.[1] In addition, "[w]hen a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*." Syl. pt. 4, *Ewing v. Board of Educ.*, 202 W. Va. 228, 503 S.E.2d 541 (1998). Accordingly, we will now proceed to review the issue before us *de novo.*

## III.  ANALYSIS

As a preliminary matter, this Court wishes to clarify that the sole issue before us is whether the circuit court erred in ruling that the arbitration agreement at issue does not contain an enforceable class action litigation waiver. In their brief and oral argument before this Court, the respondents presented several arguments in support of

---

[1] In their brief, the respondents argue that the circuit court's order is not ripe for appeal because it does not constitute a final order. Specifically, the respondents assert that the order is not final because the circuit court has not yet rendered its decision to certify the putative class. The respondents explain that should class certification be denied, the respondents will have individual claims, and a different analysis will be required. Should class certification be granted, Salem will then have the opportunity to appeal the denial of its motion to compel arbitration. This Court rejects this argument and will proceed to consider the issue before us.

their position that the arbitration agreement as a whole is not valid. The respondents assert that if the class action waiver is deemed valid, it creates a fundamental inequity in the parties' rights that renders the arbitration clause unconscionable. The respondents further aver that the arbitration agreement absent a class action waiver is procedurally and substantively unconscionable. Finally, the respondents assert that arbitration is not appropriate in this case because the respondents' claims fall outside of the scope of the arbitration agreement.

Salem posits that the circuit court ruled that the arbitration agreement is valid by referring to it as "this otherwise valid arbitration agreement." Salem admits that the circuit court did not undertake an in depth analysis or a meaningful discussion of the validity of the agreement, but that the court included in its order the relevant legal principles applicable to determining the validity of an arbitration agreement. Further, Salem avers that the respondents cannot now challenge the validity of the arbitration agreement because the respondents failed to cross-assign as error before this Court the circuit court's determination that the arbitration agreement was valid except for its ambiguity regarding the respondents' right to bring class action litigation.

This Court finds that any challenges to the arbitration agreement's validity is not properly before this Court. According to Rule 10(f) of the *West Virginia Rules of Appellate Procedure*:

7

> The respondent, if he is of the opinion that there is error in the record to his prejudice, may assign such error in a separate portion of his brief and set out authority and argument in support thereof in the manner provided in subsection (c) of this Rule. Such cross-assignment may be made notwithstanding the fact that the respondent did not perfect a separate appeal within the statutory period for taking an appeal. If the respondent's brief contains cross-assignments of error, the cover page of the brief must clearly so reflect. The petitioner may respond to the cross-assignment of errors in the reply brief.

In the recent case of *Trans-Allegheny Interstate Line Co. v. Daugherty*, No. 13-0253, 2013 WL 6152606 (W. Va. November 22, 2013) (memorandum decision), this Court declined to address a cross-assignment of error that was not presented with the required specificity. In the instant case, no cross-assignment of error was presented challenging the circuit court's determination that the arbitration agreement at issue was otherwise valid. Therefore, this Court will not address the respondents' arguments regarding the validity of the arbitration agreement. Rather, we will only address whether the arbitration agreement contains an enforceable class action litigation waiver.

Regarding the waiver issue, Salem argues that that the circuit court erred in finding that the class action waiver language in the arbitration agreement is ambiguous. As support for its argument that the class action litigation waiver is clear, Salem points to the language of the agreement requiring "individual binding arbitration," and that claims "may not be joined or consolidated with claims brought by or against any other person." According to Salem, the ordinary, dictionary definition of "join" is "to put or bring together so as to form a unit." Similarly, the term "consolidate" means "to join together

8

into one whole; unite; merge." Salem avers that when one attributes to the terms "join" and "consolidate" their ordinary meaning, and reading them together, with the requirement that claims be submitted to "individual arbitration," one is compelled to conclude that claims may only be brought on an individual basis, and not as part of a class action.

In addition, Salem contends that the language "the arbitrator shall have no authority to arbitrate claims on a class action basis" is clearly consistent with the provision's prohibition against consolidated claims. Further, Salem emphasizes the fact that the language "[t]he arbitrator shall have no authority to arbitrate claims on a class action basis" appears in the same sentence and is connected with the word "and" to the language that "claims brought by or against you may not be joined or consolidated with claims brought by any other person." Salem avers that the connecting of these two provisions can only be interpreted to support Salem's position that class action litigation claims are effectively waived under the agreement. Otherwise, says Salem, the second portion of the sentence would be rendered meaningless in violation of a fundamental rule of construction. Finally, Salem opines that it would be nonsensical for the respondents to avoid the mandatory nature of the arbitration agreement simply by making their claims a class action.

The respondents counter that the language in the arbitration agreement is ambiguous regarding a class action litigation waiver. The respondents explain that the

agreement allows for multiple reasonable interpretations regarding the availability of a class action because the language implies a waiver of class action rights but does not explicitly waive those rights. At worst, say the respondents, the agreement contradicts itself by requiring all claims to be subject to arbitration and then removing class actions from the jurisdiction of the arbitrator. The respondents emphasize that the agreement does not state that the respondents agree not to act as class representatives or participate in a class action. The respondents conclude that because the class action waiver language is not clear and unmistakable and as a result must be construed against Salem as the drafter of the agreement, the circuit court correctly ruled that there is no valid class action litigation waiver.

The parties agree that the issue in this case is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*[2] In construing the agreement at issue, we are mindful "the trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause." Syl. pt. 4, in part, *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 228 W. Va. 125, 717 S.E.2d 909 (2011). In this case, this Court must determine whether the contract language is ambiguous. "The mere fact that parties do not agree to the construction of a contract does

---

[2] The arbitration agreement provides that "[t]he Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 1, *et seq.*, shall govern this arbitration provision." *See State ex rel. City Holding Co. v. Kaufman*, 216 W. Va. 594, 598, 609 S.E.2d 855, 859 (2004) (explaining that "[t]he Federal Arbitration Act applies to an agreement to arbitrate, and the determination as to whether all of the claims are referable to arbitration is a matter governed by application of federal law" (citation omitted)).

not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 1, in part, *Berkeley Co. Pub. Serv. Dist. v. Vitro Corp.*, 152 W. Va. 252, 162 S.E.2d 189 (1968). Rather, "[c]ontract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. pt. 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 212 W. Va. 275, 569 S.E.2d 796 (2002). Also, "[t]he term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syl. pt. 4, *Estate of Tawney v. Columbia Nat. Res.*, 219 W. Va. 266, 633 S.E.2d 22 (2006).

> In addition, we are also mindful that
>
> > [i]n determining whether the language of an agreement to arbitrate covers a particular controversy, the federal policy favoring arbitration of disputes requires that a court construe liberally the arbitration clauses to find that they cover disputes reasonably contemplated by the language and to resolve doubts in favor of arbitration.

*State ex rel. City Holding Co. v. Kaufman*, 216 W. Va. 594, 598, 609 S.E.2d 855, 859 (2004) (citations omitted). In *Local Division No. 812 v. Transit Authority*, 179 W. Va. 31, 34–35, 365 S.E.2d 76, 79–80 (1987), this Court expounded upon the rule that arbitration agreements should be read in favor of arbitration as follows:

> In *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the

11

Supreme Court of the United States created a strong presumption favoring arbitration in contract disputes. The court noted that "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," arbitration should not be denied. *Id.* at 582-83, 80 S.Ct. at 1353, 4 L.Ed.2d at 1418. Doubts as to whether a particular grievance is arbitrable should be resolved in favor of arbitration. *Id.* at 583, 80 S.Ct. at 1353, 4 L.Ed.2d at 1418. Specifically, the court held that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the exclusion cause is vague and the arbitration clause is quite broad." *Id.* at 584-85, 80 S.Ct. at 1354, 4 L.E.2d at 1419.

(Footnote and additional citations omitted). This Court held in syllabus point 1 of *Transit Authority*:

In determining whether or not the parties to a collective bargaining agreement have agreed to submit a particular dispute to arbitration, it must be recognized that there is a presumption favoring arbitration, and this presumption may be rebutted only where it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Upon application of the above principles to the arbitration agreement in this case, we find that the agreement is not ambiguous. The arbitration agreement requires that claims be submitted for "individual" arbitration. In addition, it provides that "the arbitrator shall have no authority to arbitrate claims on a class action basis," and that claims "may not be joined or consolidated with claims brought by any other person." This language plainly indicates that the respondents are precluded from bringing a class action against Salem. Further, we find it significant that the clause regarding the

12

arbitrator having no authority to arbitrate claims on a class action basis appears in the same sentence as the clause prohibiting claims from being joined or consolidated. In addition, the requirement of individual arbitration when read together with the statement regarding the arbitrator having no authority to arbitrate claims on a class action basis and the prohibition on joining and consolidating claims clearly demonstrate a waiver of the right to bring class action litigation. Accordingly, we find that the arbitration agreement acts as a class action litigation waiver barring the respondents from seeking judicial relief as a class.

## IV.  CONCLUSION

For the reasons stated above, this Court reverses the August 27, 2015, order of the Circuit Court of Harrison County that denied Salem's motion to stay proceedings pending mandatory alternative dispute resolution, and we remand this case to the circuit court for further proceedings.

Reversed and remanded.