This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38372**

**ANDRAS SZANTHO, as Personal
Representative of the Wrongful Death
Estate of JAMES KUYKENDALL,**

      Plaintiff-Appellee,

v.

**CASA MARIA OF NEW MEXICO,
LLC d/b/a CASA MARIA HEALTH
CARE CENTER and THI OF
NEW MEXICO, LLC,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge**

Reddick Moss, PLLC
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Little Rock, AR

Ron Bell Injury Lawyers
Lee Coleman
Albuquerque, NM

for Appellee

Verdi & Ogletree PLLC
Faith Kalman Reyes
Santa Fe, NM

for Appellants

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** After James Kuykendall passed away while a resident in a nursing home operated by Defendants, Andras Szantho brought suit as personal representative of Kuykendall's wrongful death estate. Defendants moved to dismiss and compel arbitration, attaching to their motion an arbitration agreement that contained what Defendants contended was a binding gateway delegation clause. The district court denied the motion, concluding that (1) the court had the authority to decide gateway questions of arbitrability; (2) the parties' arbitration agreement is substantively and procedurally unconscionable; and (3) the agreement is unenforceable as a matter of federal law. We reverse because the gateway delegation clause applies and that clause is neither unconscionable nor unenforceable as a matter of federal law.[1]

**DISCUSSION**

**{2}** "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. At the outset, we agree with the uncontested premise underlying Defendants' arguments on appeal—that the parties' arbitration agreement contains a delegation clause that, absent a successful attack on the clause specifically, constitutes clear and unmistakable evidence of the parties' agreement to arbitrate gateway issues.[2] Accordingly, our analysis begins with Plaintiff's attacks on the enforceability of the delegation clause specifically, rather than Plaintiff's challenges to the underlying arbitration agreement. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71-73 (2010); *Felts*, 2011-NMCA-062, ¶ 20. And, because we conclude that none of those attacks has merit, our analysis must end there, too. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 41, 150 N.M. 398, 259 P.3d 803 (recognizing "the inevitable jurisprudential effect of the . . . decision in *Rent-A-Center*").

**I.    Plaintiff Failed to Show That the Delegation Clause Is Unconscionable**

**{3}** The district court concluded that Plaintiff had carried his burden of establishing that the delegation clause is substantively or procedurally unconscionable. *See generally Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 48, 304 P.3d 409 (holding that "the party asserting unconscionability bears the burden to prove that a contract should not be enforced on that basis"). It appears that the district court based this conclusion on its evaluation of the underlying arbitration agreement, rather than on the delegation-clause-specific assessment required by *Rent-A-Center*.

---

[1] It is undisputed that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, governs this appeal. For convenience, citations are to the most recent relevant version of each federal statute and regulation cited in this opinion.

[2] The clause provides that, "[t]o the fullest extent permitted by law, any disagreements regarding the applicability, enforceability or interpretation of this [a]greement will be decided by the arbitrator and not by a judge or jury." *Cf. Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 23, 149 N.M. 681, 254 P.3d 124 (concluding that the plain language of an arbitration agreement clearly and unmistakably delegated threshold issues of arbitrability), *aff'd on other grounds*, Nos. 33,011, 33,013, dec. (N.M. Sup. Ct. Aug. 23, 2012) (non-precedential).

However, even assuming that the district court correctly proceeded under the latter approach, we disagree that Plaintiff demonstrated that the delegation clause was unconscionable.

**{4}** Plaintiff attacks the delegation clause as substantively unconscionable on the ground that "only . . . a resident . . . would contest the applicability, enforceability, or interpretation of the arbitration agreement" and the clause, therefore, "will only ever benefit [Defendants]." In tenor, this argument echoes the rule, recently reaffirmed by our Supreme Court in *Peavy v. Skilled Healthcare Group, Inc.*, that "an arbitration agreement is facially one-sided"—and unconscionable unless this one-sidedness is justified—"when it excludes the drafting party's likeliest claim from arbitration, but requires the non[]drafting party to arbitrate its likeliest claims." 2020-NMSC-010, ¶ 20, 470 P.3d 218; *see Cordova*, 2009-NMSC-021, ¶ 25 ("Contract provisions that unreasonably benefit one party over another are substantively unconscionable."). Yet the argument ultimately misses the mark. As a matter of federal law, the delegation clause in the parties' arbitration agreement is severable from that agreement. *Rent-A-Ctr.*, 561 U.S. at 70-72. A gateway delegation clause is by definition "an additional, antecedent [arbitration] agreement[,]" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (internal quotation marks and citation omitted), that addresses "who has the primary power to decide [the] arbitrability" of an issue. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal quotation marks omitted). The question before us, therefore, is whether Plaintiff has demonstrated that it would be unconscionable for the arbitrator to decide the threshold issues of arbitrability covered by the clause. Thus, our examination of the clause for unreasonable one-sidedness is limited to the clause itself and does not include an assessment of the underlying arbitration agreement as a whole.

**{5}** Viewing the clause from this perspective, we cannot say that it is unreasonably one-sided. The clause requires arbitration of *all* arbitrability issues without exempting *either* party from arbitrating any disputes about arbitrability. And the clause applies regardless of whether the party invoking it is for or against arbitrating the merits of the underlying claim. Thus, even assuming the accuracy of Plaintiff's basic premise—that Plaintiff would invariably be the party resisting arbitration in any and all disputes about arbitrability—the clause here is evenhanded because it does not unfairly single out particular kinds of arbitrability disputes for arbitration or reserve a judicial forum for resolving arbitrability disputes to the party seeking arbitration of an underlying claim. We conclude that Plaintiff failed to show that the delegation clause is unfairly one-sided and hold that the district court erred insofar as it found that the clause is unconscionable under the framework established by our Supreme Court in cases preceding and including *Peavy*.

**{6}** We also disagree with the district court to the extent that it found the delegation clause to be procedurally unconscionable. "Procedural unconscionability goes beyond the mere facial analysis of the contract and examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt

free to accept or decline terms demanded by the other." *Cordova*, 2009-NMSC-021, ¶ 23. Plaintiff argues that the delegation clause before us is procedurally unconscionable because it is an "inconspicuous" "part of an adhesion contract." But the clause is not particularly unobtrusive, let alone to such a degree that we could find that the clause was unfairly hidden. And, even assuming that the clause is an adhesion contract, "not all adhesion contracts are unconscionable." *Rivera*, 2011-NMSC-033, ¶ 44. Instead, "an adhesion contract is procedurally unconscionable and unenforceable 'when the terms are patently unfair to the weaker party.' " *Id.* (quoting *Cordova*, 2009-NMSC-021, ¶ 33); *cf. Cordova*, 2009-NMSC-021, ¶ 24 ("Procedural and substantive unconscionability often have an inverse relationship. The more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable."). Having concluded that Plaintiff has failed to establish that the clause is substantively unconscionable to any degree, we conclude that the clause is not procedurally unconscionable solely because it is part of an adhesion contract (if it is).[3]

## II. Federal Law Does Not Render the Delegation Clause Unenforceable

**{7}** The district court also concluded that the parties' arbitration agreement is unenforceable as a matter of federal law and, in support of that conclusion, cited a federal statute, 42 U.S.C. § 1396r(c)(5)(A)(iii), and regulation, 42 C.F.R. § 483.15(a)(4) (2019). In pertinent part, the statute and regulation provide that, beyond amounts to be paid under a State plan for medical assistance, a nursing facility must not "charge, solicit, accept, or receive . . . any gift, money, donation, or other consideration" as a precondition of admitting an individual entitled to medical assistance for nursing facility services to the facility. Defending the district court's reasoning, Plaintiff contends that the statute and regulation prohibit nursing facilities like Defendants' from conditioning a resident's admission on the resident's entry into an arbitration agreement. Plaintiff argues that an agreement to arbitrate, including a gateway delegation clause, constitutes prohibited "other consideration" under the plain meaning of the statute and regulation and that the parties' agreement to arbitrate gateway disputes is therefore unenforceable.

**{8}** The word "consideration" can reasonably be used in a sense different from the technical, legal one to which Plaintiff contends it is confined—the concept of consideration in contract law.[4] *See Consideration*, *Merriam-Webster Dictionary*,

---

[3]In the district court, Plaintiff's counsel argued, without presenting evidence, that various factual circumstances surrounding the signing of the parties' arbitration agreement rendered the agreement procedurally unconscionable. Plaintiff does not make an argument based on these circumstances on appeal, and we do not consider them.

[4]Because the parties' reciprocal promises to arbitrate future arbitrability disputes undoubtedly constitute "consideration" in this sense, we reject Plaintiff's suggestion that the parties did not enter into an arbitration agreement because any such agreement was unsupported by consideration. *See Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 12, 134 N.M. 558, 80 P.3d 495 ("Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do."); *Acme Cigarette Servs., Inc. v. Gallegos*, 1978-NMCA-036, ¶ 21, 91 N.M. 577, 577

https://www.merriam-webster.com/dictionary/consideration (last visited Feb. 4, 2022) (defining "consideration," in pertinent part, as recompense or payment). We think the statute employs the term in this colloquial sense. The statute's list of prohibited preconditions makes no sense if it is read to consist of legal terms of art because the absence of consideration is a key feature of the legal meanings of the terms "gift" and "donation." *See Donation*, *Black's Law Dictionary* (11th ed. 2019) (defining donation as "[a] gift"); *Gift*, *Black's Law Dictionary* (11th ed. 2019) (defining a gift as property transferred "without compensation" and quoting a treatise stating that a gift "must be without a valuable consideration" (internal quotation marks and citation omitted)). We are aware of no basis for concluding that Congress used the terms "donation" and "gift" in some nonlegal sense while simultaneously intending the phrase "other consideration" to refer to the legal concept of consideration in contract law. And, as Defendants observe, courts in several other jurisdictions have rejected arguments similar to Plaintiff's on the ground that, under the canons of statutory construction noscitur a sociis and ejusdem generis, a resident's agreement to arbitrate future disputes is insufficiently like a "gift, money, [or] donation" to be embraced by the phrase "other consideration."[5] *See, e.g.*, *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 419 (Ind. Ct. App. 2004) (interpreting the statute's prohibition on seeking or accepting "other consideration" as a condition of admission to apply to conduct "akin to charging an additional fee"). *See generally State v. Off. of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 29, 285 P.3d 622 (explaining that under the canon of ejusdem generis, "where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned" (internal quotation marks and citation omitted)); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018). We arrive at the same conclusion as these courts and hold that Defendants did not violate § 1396r by conditioning admission into its facility upon entry into an agreement to arbitrate gateway disputes.[6]

**CONCLUSION**

---

P.2d 885 ("[I]n a bilateral agreement, a promise of one party may support one or more promises of the other party.").

5Plaintiff does not identify any precedent from any jurisdiction that has concluded that "consideration" was used as a legal term of art in this context, and we are aware of no such precedent.

6We decline Plaintiff's invitation to uphold as right for any reason, *see Freeman v. Fairchild*, 2018-NMSC-023, ¶ 30, 416 P.3d 264, the district court's conclusion that federal law renders the parties' arbitration agreement unenforceable. Plaintiff invokes two versions of 42 C.F.R. § 483.70(n)(1), which currently prohibits nursing facilities from making arbitration agreements a condition of a resident's admission, and which at one point completely banned the use of predispute arbitration agreements between nursing facilities and residents. But no authority cited in Plaintiff's brief, nor any other authority of which we are aware, suggests that Congress has altered the FAA's mandate that courts "enforce the bargain of the parties to arbitrate[,]" *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532-33 (2012) (per curiam) (internal quotation marks and citation omitted), whenever an arbitration agreement runs afoul of these regulations. And Plaintiff does not explain how his interpretation of the regulations can be reconciled with the FAA. Presented with no developed argument on these points, we decline to rely on the regulations as a basis for affirming. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

**{9}** The district court erred by concluding that the delegation clause in the arbitration agreement is unenforceable either by virtue of the doctrine of unconscionability or as a matter of federal law. Accordingly, we reverse and remand for entry of an order compelling arbitration of the threshold arbitrability issues raised by Plaintiff and any further proceedings consistent with this opinion.

**{10}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**GERALD E. BACA, Judge**