[J-46-2023] [MO: Mundy, J.]

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| MBC DEVELOPMENT, LP, MBC MANAGEMENT, LLC, MBC PROPERTIES, LP, JAMES L. MILLER, MILLER PROPERTIES MANAGEMENT, LLC, MARTIN CERULLO, WILLIAM KIRWAN | : : : : : : : : : : : | No. 1 MAP 2023<br><br>Appeal from the Order of the Superior Court dated August 12, 2022 at No. 1295 MDA 2021 Vacating in Part/Affirming In Part the Order of the Schuylkill County Court of Common Pleas, Civil Division, dated September 28, 2021 at No. S-797-2021 and Remanding |
| v. | : | |
| JAMES W. MILLER | : : | ARGUED:  September 13, 2023 |
| APPEAL OF: MBC DEVELOPMENT, LP, MBC MANAGEMENT, LLC, MBC PROPERTIES, LP, JAMES L. MILLER, AND MILLER PROPERTIES MANAGEMENT, LLC | : : : : : : | |

## CONCURRING OPINION

**JUSTICE DONOHUE**                                                     **DECIDED:  May 31, 2024**

In this appeal, we agreed to decide whether, pursuant to the terms of a mandatory arbitration clause in these limited partnership agreements,[1] a limited partner can force arbitration of his challenges to the recommendations of a special litigation committee — despite that the Pennsylvania Uniform Limited Partnership Act ("Limited Partnership Act")[2] mandates that a partnership agreement "may not … vary" the statutory requirement that those challenges be subject only to a "court review."  15 Pa.C.S. § 8615(c)(18).  The

---

[1]  There are two limited partnerships agreements at issue in this appeal:  MBC Properties Limited Partnership Agreement and MBC Development Limited Partnership Agreement ("Agreements").  As relevant here, their terms are identical.

[2]  15 Pa.C.S. §§ 8611-8695.

Majority resolves the issue based on the interpretation of Sections 8615(c)(18) and 8694 of the Limited Partnership Act which it views as being incorporated into the Agreements through the Agreements' "Applicable Law" provisions. Majority Op. at 3, 18-19 (citing MBC Properties Limited Partnership Agreement, § 12.6 (providing that "This Agreement shall be construed and enforced in accordance with the laws of the State of Pennsylvania[]"); MBC Development Limited Partnership Agreement, § 12.6 (same)). I agree with the Majority that Section 8694[3] mandates that a review of a special litigation committee's determination must be done in a court of common pleas and that pursuant to Section 8615(c)(18), a limited partnership agreement cannot vary Section 8694. Further, I agree with the Majority that the arbitration clauses in the Agreements at issue in this appeal do not encompass challenges to the recommendation of a special litigation committee.[4] Majority Op. at 18. However, I do not view the "Applicable Law" provisions as having any substantive bearing on the scope of the arbitration provisions in the Agreements. Instead, my conclusion and reasoning emanate from the unique nature of limited partnerships formed pursuant to the Limited Partnership Act and the choices made by the parties in the formulation of the Agreements.

---

[3] Section 8694 is entitled "Special litigation committee" and scrupulously details the parameters of such committees, their composition, the procedures, the permissible determinations, and the method to challenge their recommendations. 15 Pa.C.S. § 8694 (a)-(i). For purposes of this appeal, only its mandate of court review of committee determinations is relevant. 15 Pa.C.S. § 8694(f).

[4] Whether a dispute is within the scope of the arbitration agreement is a question of law subject to judicial review. *See Flightways Corp. v. Keystone Helicopter Corp.*, 331 A.2d 184, 186 (Pa. 1975) (citing *Borough of Ambridge Water Authority v. J. Z. Columbia*, 328 A.2d 498 (Pa. 1974)). "[J]udicial inquiry is limited to the questions of whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision." *Id*. Thus, as the trial court explained, judicial review of a petition to stay arbitration requires courts to determine (1) whether a valid arbitration agreement exists and (2) whether the arbitration agreement encompasses the dispute. Trial Court Opinion, 9/28/2021, at 5 (citing *Midomo Co., Inc. v. Presbyterian Housing Dev. Co.*, 739 A.2d 180, 186 (Pa. Super. 1999)).

As contract interpretation presents questions of law, our scope of review is plenary and standard of review is de novo. *Pa. Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). Under Pennsylvania law,[5] when interpreting the terms of a contract, the purpose is to ascertain and give effect to the intention of the parties. *Binswanger of Pa., Inc. v. TSG Real Estate LLC*, 217 A.3d 256, 262 (Pa. 2019) (citing *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001)). "[T]he entire contract should be read as a whole ... to give effect to its true purpose." *Com. Ex. Rel. Kane v. UPMC*, 129 A.3d 441, 463-64 (Pa. 2015) (citing *Pritchard v. Wick*, 178 A.2d 725, 727 (Pa. 1962)). A contract must be interpreted in a manner giving effect to all of its provisions. *Id*. (citing *Murphy,* 777 A.2d at 429). We "will not interpret one provision of a contract in a manner which results in another portion being annulled." *Id*. (citing *LJL Transp. v. Pilot Air Freight,* 962 A.2d 639, 648 (Pa. 2009)). Thus, an interpretation of the contract will be rejected if it leaves portions of the contract language meaningless or superfluous.

The Majority's focus on the "Applicable Law" provisions of the contract as the lynchpin in the determination of the parties' intent as to the scope of the arbitration provision is perplexing. The Majority states that this provision signals the parties' intent for the Limited Partnership Act to govern the Agreements and for them to be bound by

---

[5] Although it is not necessary to precisely divine the purpose of the "Applicable Law" provision in the Agreements, it obviously calls for the application of Pennsylvania contract interpretation principles in deciding the scope of the arbitration clauses at issue in this dispute. It is pertinent to note that Section 8615(c)(6) prohibits a partnership agreement from varying the law applicable under Section 8614 (relating to governing law). 15 Pa.C.S. §§ 8614, 8615. Not surprisingly, Section 8614 requires that Pennsylvania law governs, among other things, the internal affairs of the limited partnership. 15 Pa.C.S. § 8614(a)(1). According to the comment to Section 8614, the concept of internal affairs "certainly includes interpretation and enforcement of the partnership agreement[.]" 15 Pa,C,S, § 8614(a)(1) cmt. With or without Section 12.6 of the Agreements, Pennsylvania law would apply since this is a non-variable term. Furthermore, the comment accompanying Section 8614 indicates that it, like its counterpart in the Uniform Limited Partnership Act, is intended as a choice of law provision to control when more than one state's law may come into play in partnership disputes.

the Act. Majority Op. at 18-21. It is axiomatic that these partnerships are governed by the statute that allows their formation. These parties expressly announced their intentions to conduct their relationship pursuant to the Limited Partnership Act and to derive the benefits derived from the utilization of that business form. MBC Properties Limited Partnership Agreement, § 1.3 A-F; MBC Development Limited Partnership Agreement, § 1.3 A-F. The prefatory clauses of the Agreements identify the limited partnerships as Pennsylvania Limited Partnerships; designate the date of filing of the Certificate of Limited Partnerships of record with the Department of State of the Commonwealth of Pennsylvania as the effective dates of the Agreements and indicate that "the General Partner and the Limited Partners … desire to form a [l]imited partnership under the Pennsylvania Revised Uniform Limited Partnership Act, 15 P.S. § 8501 et seq. upon the terms and conditions set forth [in the body of the Agreements.]" MBC Properties Limited Partnership Agreement, at 1; MBC Development Limited Partnership Agreement, at 1. Given these express provisions announcing the centrality of the Limited Partnership Act to the Agreements, there is no reason to look to the "Applicable Law" provision to find the parties' intent to be bound by the Act.[6]

The Limited Partnership Act is integral to the interpretation of any agreement governing such partnerships formed in this Commonwealth. A limited partnership is governed by both the terms of the partnership agreement as well as the Limited

---

[6] The Majority believes that it is essential to glean the parties' intent to be bound by the terms of the Limited Partnership Act from the "Applicable Law" provision in the Agreements because a choice of law provision was the lynchpin for the discerning parties' intent by the state court in *Volt Information Sciences., Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989). Majority Op. at 24 n.12. This was apparently the **only** indication of the parties' intent to be bound by California law, including its procedural rules governing arbitration. Here, as shown, the parties repeatedly expressed their intent to operate under the provisions of the Pennsylvania Limited Partnership Act. The Majority's statement that without the "Applicable Law" provision, the parties otherwise did not express their intent to be bound by the Limited Partnership Act is baffling given the repeated invocation of it in the Agreements. *Id*.

Partnership Act. *Hanaway v. Parkesburg Grp., LP*, 168 A.3d 146, 157 (Pa. 2017) (distinguishing analysis of limited partnership agreements from that applicable to employment and other contracts on the basis that limited partnership agreements are governed by statute). The terms of a limited partnership agreement are interpreted with reference to the Limited Partnership Act. The "'rights, duties, and liabilities of the partners in a limited partnership formed in [Pennsylvania] are governed, first and foremost, by … legislative acts.'" *Hanaway*, 168 A.3d at 151-52 (citing *Hanaway v. Parkesburg Group, LP*, 132 A.3d 461, 477 (Pa. Super. 2015) (Donohue, J., dissenting) *aff'd in part, rev'd in part*, 168 A.3d 146 (Pa. 2017)).

Section 8615 of the Limited Partnership Act prescribes the contents of partnership agreements. Section 8615(c) sets forth what a partnership agreement may not do. Relevant to this appeal, Section 8615(c)(18) establishes that a partnership agreement may not "vary the provisions of Section 8694 (relating to special litigation committees), except that **the partnership agreement may provide** that the partnership may not have a special litigation committee." 15 Pa.C.S. § 8615(c)(18) (emphasis added).

When the partnership Agreements in this case were being formulated and finalized, the partners had a choice regarding how to address demands for litigation made by limited partners. They could agree that in the event of a demand by a limited partner, the partnership could utilize a special litigation committee to address the demand and then be bound by the provisions of Section 8694. Alternatively, they could agree that in the event of a demand, the partnership could not utilize a special litigation committee to resolve it, thereby avoiding any application of Section 8694. The parties chose the first alternative, as the limited partnership Agreements do not contain a provision specifying that "the partnership may not have a special litigation committee" as allowed by Section

8615(c)(18).[7]  Because these partnership Agreements do not preclude the use of a special litigation committee, the Agreements contain the statutorily implied term that if a special litigation committee is formed to address the demand,[8] Section 8694 would apply. This was a choice made by the parties in formulating these Agreements.

In addition to the provision binding the partnerships to the dictates of Section 8694 — including resolution of challenges to the recommendations of a special litigation committee in the courts of common pleas — the partnership Agreements include a mandatory arbitration clause.[9]  The arbitration clause is broad as it applies to "any dispute

---

[7]  At a hearing before the trial court, the parties agreed that the Agreements do not preclude the use of a special litigation committee, and no objections were raised regarding the limited partnerships' appointment of a special litigation committee at the time it was formed.  Trial Court Opinion, 9/28/2021, at 6.

[8]  Once a demand is made, the partnership may decide not to use a special litigation committee.  *See* 15 Pa.C.S. § 8694(a) (providing that, once a demand is received, "the general partners **may** appoint a special litigation committee to investigate the claims asserted") (emphasis added).  Here, the general partners invoked such a committee when faced with the limited partner's demand for litigation.

[9] The Agreements contain the following mandatory arbitration clause:

Section 11.1 Mandatory Arbitration

A.  Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by arbitration in accordance with the rules of the American Arbitration Association in effect at the time of submission to arbitration. Each Partner consents for himself or itself, and for his or its respective successors in interest, to the submission of any dispute or controversy hereunder to the arbitration process as aforesaid, where such submission is initiated by any other Partner (or that Partner's successor in interest).  The arbitration shall be conducted by a single arbitrator selected by the parties or, if they cannot agree, then the arbitrator or arbitrators shall be selected under the procedures of the American Arbitration Association.

B.  All decisions of the arbitrator shall be final, binding and conclusive on all Partners (including any decision with regard

(continued…)

or controversy arising under or in connection with this agreement[.]" MBC Properties Limited Partnership Agreement, § 11.1; MBC Development Limited Partnership Agreement, § 11.1. Moreover, it provides for a single arbitrator to resolve any such disputes whose decision is conclusive.

The broad mandatory arbitration provision in the limited partnership Agreements and the implied provision to be bound by Section 8694 of the Limited Partnership Act, each in isolation, appear to be in conflict relative to resolution of challenges to recommendations of a special litigation committee because a dispute over such recommendations clearly arises under or in connection with the partnership Agreement per the arbitration provisions but requires court review per the agreement to be bound by Section 8694. In interpreting the contract, our dual goal is to give effect to the intention of the parties as evidenced by the terms of the contract as a whole and, in doing so, to give meaning to all of the terms of the contract. An interpretation of a contract that leaves portions of the contract meaningless or superfluous must be rejected. *Com. Ex. Rel. Kane*, 129 A.3d at 463-64 (citing *Pritchard*, 178 A.2d at 727; *Murphy*, 777 A.2d at 429; *LJL Transp.*, 962 A.2d at 648).[10]

---

to costs as set out below in Section 11.2, and no Partner (and no successor in interest) shall have a right of appeal from any such decision to any Court. However, solely for the purpose of implementing the arbitrator's decision, judgment may be entered on the arbitrator's award in any court having jurisdiction.

MBC Properties Limited Partnership Agreement, § 11.1; MBC Development Limited Partnership Agreement, § 11.1.

[10] The Dissenting Justice is apparently of the view that in interpreting the Limited Partnership Agreements, we should not give effect to terms that are implied by virtue of the Limited Partnership Act. *See* Dissenting Op. at 4-5 n.15. This is flat out in contravention of *Hanaway*. Contrary to the Dissenting Justice's characterization, the parties' rejection of the opt out in Section 8615(c)(18) did not result in "invisible" or (continued…)

Given these interpretive precepts, the arbitration clause cannot encompass the resolution of challenges to the recommendations of the special litigation committee. To read the Agreements in that manner negates the agreement of the parties to be bound by Section 8694 in the event of the circumstances giving rise to the utilization of a special litigation committee. Moreover, once the parties agreed to allow the partnership to utilize a special litigation committee, by statute the provisions of Section 8694 could not be varied. 15 Pa.C.S. § 8615(c)(18). Thus, an arbitrator could not be designated to resolve a special litigation committee dispute. To effectuate the intent of the parties, the two provisions must be reconciled in a way that does not make either provision superfluous: the mandatory arbitration clause excludes special litigation committee challenges because the Agreements provide for a different forum for resolution of such disputes.

Contrary to the argument advanced by Appellee James W. Miller ("Miller"), this appeal does not raise any issue involving the Federal Arbitration Act. *See* Miller's Brief at 27-30 (citing *Marmet HealthCare Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) (providing that, "when state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: the conflicting rule is displaced by the FAA[]") (internal citations omitted)).[11] While the FAA forbids state law from prohibiting outright the

---

"nonexistent contractual language[.]" *Id*. at 5 n.15. It resulted in an implied contractual term requiring submission of a dispute to a Court of Common Pleas in the circumstances presented here. In interpretating the Agreements, this agreed upon term must be given effect.

[11] Miller asserts that the Limited Partnership Agreements are subject to the FAA. He offers no language in the Agreements or other advocacy to support the interstate commerce requirement for FAA application. *See Allied-Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265, 275 (1995) (reading the FAA's commerce requirement as "insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties do not contemplate an interstate commerce connection"); *Southland v. Keating*, 465 U.S. 1, 14 (1984) (discussing the FAA's "interstate commerce requirement"). My review of the Limited Partnership Agreements indicates that they trigger FAA analysis.

arbitration of a particular type of claim,[12] it has no application to contracts or arbitration clauses that by their own terms limit the scope of the matters subject to arbitration. Here, by the choice of the parties, the arbitration clauses do not encompass the resolution of disputes involving the recommendation of a special litigation committee. This is so because the Agreements recognized another forum for resolution of such disputes — a court of common pleas.[13]

For the foregoing reasons, I concur in the result reached by the Majority reversing the order of the Superior Court.

---

[12] The relevant FAA provision is as follows:

> **§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate**
>
> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2.

[13] The Dissenting Justice is of the view that Section 8694 of the Limited Partnership Act triggers application of the FAA because review of a determination of a special litigation committee must be conducted in the Court of Common Pleas and thus, arbitration of the matter is precluded. Dissenting Op. at 8. The Dissenting Opinion states that this conclusion springs from the Majority's correct conclusion that the Limited Partnership Act "precludes arbitration entirely in this context." *Id.* This position ignores the choice of the partners to avoid arbitration in this context. The partners could have but did not opt out of the application of Section 8694. As a result, the arbitration clauses in the Agreements do not extend to review of SLC determinations. It is the Agreements, not the Limited Partnership Act, that preclude the arbitration of these disputes.